UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Suzanne Flemming,<br>    *Plaintiff*,<br>    *v.*<br>REM Connecticut Community Services Inc., National Mentor Services LLC, and National Mentor Holdings, Inc.<br>    *Defendants*. | Civil No. 3:11cv689 (JBA)<br><br>December 20, 2012 |

**RULING ON DEFENDANTS' MOTION TO DISMISS**

Defendants National Mentor Services, LLC ("Services"), and National Mentor Holdings, Inc. ("Holdings"), move [Doc. #43] pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all counts against Defendants Services and Holdings in Plaintiff Suzanne Flemming's Amended Complaint [Doc. # 36], on the grounds that Plaintiff has failed to allege sufficient facts to establish that Defendants were her joint employers within the meaning of the Fair Labor Standards Act ("FLSA") and the Connecticut Minimum Wage Act ("CMWA"). For the following reasons, Defendants' Motion to Dismiss is denied.

I.      **Discussion**[1]

Both the FLSA and the CMWA control certain terms of the relationship between "employers"[2] and "employees."[3]  29 U.S.C. § 207; Conn. Gen. Stat. § 31-72.  Where a plaintiff claims multiple simultaneous employers, or "joint employers" under the FLSA, "the overarching concern is whether the alleged employer possessed the power to control the workers in question . . . with an eye to the economic reality presented by the facts of each case."  *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (internal citations and quotation marks omitted).  In applying the economic reality test, a court must first evaluate whether the alleged joint employer exercised formal control over a plaintiff's employment.  The Second Circuit has recognized a four–factor joint–employer test to establish formal control, which asks whether an employer:

> (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.

---

[1] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although detailed allegations are not required, a claim will be found facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Conclusory allegations are not sufficient. *Id.* at 678–79; *see also* Fed. R. Civ. P. 12(b)(6).

[2] FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d).  The CMWA defines "employer" to mean "any individual, partnership, association, joint stock company, trust, corporation, the administrator or executor of the estate of a deceased person, the conservator of the estate of an incompetent, or the receiver, trustee, successor or assignee of any of the same, employing any person, including the state and any political subdivision thereof." Conn. Gen. Stat. § 31-71a(1).

[3] FLSA provides that "the term 'employee' means any individual employed by an employer." 29 U.S.C. § 203(e)(1).  The CMWA defines "employee" to include "any person suffered or permitted to work by an employer." Conn. Gen. Stat. § 31-71a(2).

*Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984).

However, "*Carter* did not hold . . . that those [four] factors are *necessary* to establish an employment relationship. *See Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71 (2d Cir. 2003) (emphasis in original). A court may also consider the following factors to determine whether a defendant had functional control over a plaintiff's employment:

> (1) whether [the putative employers'] premises and equipment were used for the plaintiffs' work; (2) whether [the direct employer] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line–job that was integral to [the putative employers'] process of production; (4) whether responsibility under the contracts [between the direct and putative employers] could pass from one [entity] to another without material changes; (5) the degree to which the [putative employers] or their agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominately for the [putative employers].

*Id.* at 72. The Second Circuit has not announced a definitive set of factors to establish functional control, recognizing that there will be "different sets of relevant factors based on the factual challenges posed by particular cases." *Barfield v. New York City Health and Hospitals*, 537 F.3d 132, 142–43 (2d Cir. 2008) (holding that previous precedent "state[s] no rigid rule for the identification of an FLSA employer . . . [but] provide[s] a nonexclusive and overlapping set of factors to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA").

Under Connecticut law, although the CMWA "provides wage and overtime guarantees similar to the FLSA," *Scott v. Aetna Servs. Inc.*, 210 F.R.D. 261, 263 n.2 (D. Conn. 2002), the Connecticut Supreme Court has declined to adopt the "economic reality" test for purposes of evaluating joint–employer status under the CMWA. *See*

3

*Butler v. Hartford Technical Inst.*, 243 Conn. 454, 462 n.8 (1997). Instead, Connecticut courts consider factors such as whether the alleged employer set the hours of employment, paid wages, exercised control over day–to–day responsibilities, or ran other daily operations. *See id.* at 464–65; *see also Petronella ex rel. Maiorano v. Venture Partners, Ltd.*, 60 Conn. App. 205, 211–12 (2000).

Plaintiff alleges the following facts to support her claim that Defendants Holdings and Services are her joint employers:

- Defendant Services and Holdings either directly or through common management policies of Defendants, directed the work of Plaintiff and all other similarly situated individuals (Amend. Compl. ¶¶ 7–8), by operating the entities within The Mentor Network, including Defendant REM, using "a well–defined set of policies procedures and quality standards that create a level of support and consistency unavailable elsewhere." (*Id.* ¶ 9.) Using an executive management team to develop and oversee these policies, which include identical job descriptions for all entities operating under their trademark "The Mentor Network," Defendants collectively directed the work of Plaintiff and other similarly situated individuals. (*Id.* ¶¶ 9, 12.) Defendants also maintained the employment records of Plaintiff and all other similarly situated individuals. (*Id.* ¶¶ 7–8, 15.)

- Defendants Services and Holdings also determined the rate and method of payment of wages to Plaintiff and all other similarly situated individuals (*id.* ¶¶ 7–8), and classified all Program Supervisors as exempt from overtime compensation (*id.* ¶ 16). Plaintiff's paycheck was drawn from the Mentor Network, which is a trademark owned by Defendants Holdings and Services. (*Id.*)

- Defendants Services and Holdings managed the employee benefits that were given to Plaintiff and other similarly situated individuals, which were consistent among all Program Supervisors. (*Id.* ¶ 14.)

- Defendants Services and Holdings had the authority to hire and fire Plaintiff and all other similarly situated individuals for, *inter alia*, violating the uniform rules and policies created and distributed by Defendants. (*Id.* ¶¶ 7–8, 13.)

- Defendants Services and Holdings employed a senior management team to develop and oversee these policies and procedures for each entity operating under the trademark of "The Mentor Network," and employed regional management employees who supervised the work of Plaintiff and similarly situated individuals. (*Id.* ¶ 13.) Specifically, Defendants Services and Holdings employed Patti Maguire as Vice President who oversaw operations in the Northeast, including the operations of Defendant REM, Plaintiff's direct employer. (*Id.*)

- Connecticut's Worker's Compensation Commission listed Defendant Holdings as Plaintiff's employer on a claim form. (*Id.* ¶ 18; Ex 1 to *id.*)

Defendants make two arguments as to why Plaintiff has failed to allege a joint–employer relationship. First, Defendant claims that Plaintiff's allegations are conclusory, because they merely restate the joint–employer factors established by the Second Circuit, and thus are insufficient to meet Plaintiff's burden on a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). The Court disagrees: Plaintiff's allegations are not mere "legal conclusions couched as fact[]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). They do not simply state that Defendants are Plaintiff's joint employers or offer only a rote recital of recognized factors because these factors are also facts. For example Plaintiff specifically alleges that Defendants have authority to discipline or fire her, set her

5

rate and method of payment, and maintain her employment records. These are statements of fact, which the Court must accept as true when ruling on a motion to dismiss. *See Iqbal*, 556 U.S. at 678.

Second, Defendants claim that several of Plaintiff's allegations are insufficient, on their own, to establish a joint-employment relationship. Defendants cite *Zheng* for the proposition that the policies enforced across the Mentor Network do not establish an employer-employee relationship between Plaintiff and Defendants Holdings and Services. In *Zheng*, the Second Circuit explained that extensive supervision of the plaintiff by the defendant demonstrates an employer-employee relationship where the defendant effectively controls the terms and conditions of the plaintiff's employment, *see Zheng*, 355 F. 3d at 74–75, as distinguished from a subcontracting relationship in which "supervision with respect to contractual warranties of quality and time of delivery has no bearing on the joint employment inquiry, as such supervision is perfectly consistent with a typical, legitimate subcontracting arrangement." *Id.* at 75. Other courts have interpreted this reasoning to mean that where the evidence of supervision over quality control was intended to protect customers, it alone was insufficient to create more than a normal parent-subsidiary relationship. *See Moreau v. Air France*, 356 F. 3d 942, 951 (9th Cir. 2004) (finding that supervision by airline over ground handling employees was done to ensure compliance with passenger safety regulations and thus did not show effective control of joint-employer relationship); *Jacobson v. Comcast Corp.*, 740 F. Supp. 2d 683, 691-92 (D. Md. 2010) ("It is also significant that the control Comcast does exercise is in part designed to protect Comcast customers. . . . Comcast's quality control procedures ultimately stem from the nature of their business and the need to provide reliable service to their customers, not the nature of the relationship between the technicians and

6

Comcast. While Comcasts's supervision and control may appear substantial in degree, it is qualitatively different from the control exercised by employers over employees."); *see also Lepkowski v. Telatron Marketing Group, Inc.*, 766 F. Supp. 2d 572, 579 (W.D. Pa. 2011) ("Courts have widely held that detailed instructions and a strict quality control mechanism will not, on their own, indicate an employment relationship." (internal quotation marks omitted)).

Defendants also reference Plaintiff's allegations about Defendants Holdings and Services administering Plaintiff's employee benefits as insufficient to show they were her joint employers. First, Defendants correctly point out that administration of employee benefits is not a factor under the CMWA. Furthermore, Connecticut employs a different test for determining "employer" status under the workers' compensation statute, *see Hanson v. Transportation General, Inc.*, 45 Conn. App. 441 (Conn. App. Ct. 1997) (announcing "employer" test in a workers' compensation case), and thus Ex. 1 to the Amended Complaint does not bear significantly on the plausibility of Plaintiff's state law claims. Defendant cites to several out–of–circuit district court cases to support the proposition that the administration of employee benefits, management of payroll services and payment of payroll taxes and workers' compensation insurance are alone insufficient to establish that a defendant is an employer under the FLSA. *See Maddock v. KB Homes, Inc.*, 631 F. Supp. 2d 1226, 1234 (C. D. Cal. 2007) (holding that maintenance of employee records via shared payroll services and a joint database alone is insufficient as a matter of law to meet the economic reality test); *Beck v. Boce Group, L.C.*, 391 F. Supp. 2d 1183, 1191 (S.D. Fla. 2005) (holding that preparation of payroll checks, and payment of payroll taxes and workers' compensation insurance is probative, but not dispositive, of joint employment).

Defendants' arguments slice and dice Plaintiff's allegations separately, instead of evaluating the totality of the circumstances, as the Second Circuit has instructed courts to do in joint employer cases. *See, e.g.*, *Zheng*, 355 F.3d at 71 ("[E]conomic reality is determined based on *all* the circumstances and any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition." (internal quotation marks and citations omitted) (emphasis in original)); *Herman*, 172 F.3d at 139 ("No one of the four [*Carter*] factors standing alone is dispositive."). Thus, Defendants' arguments that any particular allegation contained in Plaintiff's Amended Complaint is insufficient, on its own, to establish a joint-employer relationship, does not necessitate the conclusion that Plaintiff has failed to meet her pleading burden. Rather, the Court must look to each of the factors set out by the Second Circuit, in addition to any other relevant factual allegations, to determine whether Defendants Holdings and Services exercised the requisite degree of control over Plaintiff such that they were her employers within the meaning of the FLSA.

At oral argument, Defendants also argued that because Plaintiff did not allege that Defendants Holdings and Services exercised daily on-the-ground-type supervision or direction over Plaintiff's work, her joint-employment claim must necessarily fail. Without alleging this high degree of control, Defendants argue, Plaintiff has done nothing more than plead that a typical parent-subsidiary relationship existed between Defendants Holdings and Services and Defendant REM, which would be insufficient to establish that Defendants Holdings and Services were her joint employers. *See In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litigation*, 735 F. Supp. 2d 277, 338 (W.D. Pa. 2010) ("The doctrine of limited liability creates a strong presumption that a parent corporation is not the employer of its subsidiary's employees, and only evidence of

control suggesting a significant departure from the ordinary relationship between a parent and its subsidiary is sufficient to establish a joint employer relationship." (internal quotation marks and citations omitted)).   However, the Second Circuit has recognized that joint employer status:

> does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees. Control may be restricted or exercised only occasionally, without removing the employment relationship from the protections of the FLSA, since such limitations on control do not diminish the significance of its existence.

*Herman*, 172 F.3d at 139.  Thus, Plaintiff need not allege daily supervision in order to plausibly state a claim of a joint–employment relationship.  Here, Plaintiff claims that Defendants Holdings and Services drafted her job description, thereby controlling her primary responsibilities, oversaw her performance via a regional management team, and had the authority to impose discipline via uniform procedures and policies that they had drafted.  Whether Plaintiff can develop a factual record to show that Defendants Holdings and Services exercised a sufficiently high degree of control over her daily working conditions via these means will be examined on a motion for summary judgment.  For the purposes of this motion to dismiss, however, the factual allegations do not show the implausibility of a claim that Defendants exercised the requisite control to be joint employers.

In applying the *Carter* factors, the Court concludes that Plaintiff has alleged sufficient facts to establish a plausible claim that Defendants were her joint employers within the meaning of the FLSA.  Plaintiff has alleged that Defendants had the power to hire, discipline, and fire her pursuant to the policies and procedures they issued (*see* Amend. Compl. ¶¶ 7–8, 13); that Defendants controlled the conditions of her employment by supervising her work via a regional manager, by imposing a uniform job

description on her position and by binding Plaintiff to a set of uniform policies and procedures (*see id.*); that Defendants set her rate and method of payment (*see id.* ¶¶ 7–8); and that Defendants maintained her employment records (*see id.* ¶¶ 7–8, 15). Based on these allegations, the Court does not find as a matter of law that it is implausible that Defendants Holdings and Services exercised a sufficient degree of control over Plaintiff's employment to qualify as her joint employers under the FLSA.

Furthermore, Plaintiff has alleged additional facts that would indicate that Defendants exercised a high degree of control over her employment. Defendants administered her employee benefits, (*see id.* ¶ 14), were responsible for her workers' compensation benefits (*see id.* ¶ 18; Ex 1 to *id.*), and Defendant Holdings was identified as her employer on a claim form from the Connecticut Workers' Compensation Commission (*see id.* ¶ 18; Ex. 1 to *id.*). Courts in this Circuit have found that plaintiffs met their pleading burden on a motion to dismiss based on similar factual allegations. *See, e.g., Hart v. Rick's Cabaret Int'l Inc.*, No. 09 Civ. 3043 (JGK), 2010 WL 5297221, at *3 (S.D.N.Y. Dec. 20, 2010) (holding that where a parent company supervised subsidiary employees via regional managers, where regional managers were responsible for enforcing global policies and procedures and for hiring and firing subsidiary employees, and where the parent company classified the subsidiary employees as exempt under the FLSA, there was sufficient evidence to suggest a joint–employer relationship under the *Carter* factors); *Beltre v. Lititz Healthcare Staffing Solutions LLC*, 757 F. Supp. 2d 373, 378 (S.D.N.Y. 2010) (holding that plaintiff's allegations that defendant paid her wages, held itself out as her employer in a contract, and was responsible for taxes and workers' compensation was sufficient to allege joint employment on a motion to dismiss).

Plaintiff also alleges that Defendants caused the alleged FLSA violation by improperly designating all Program Managers as exempt from overtime compensation. (*See id.* ¶ 16.) Courts in this circuit have recognized facilitation of the alleged violation as a significant factor in the joint–employer analysis. For example, in *Lanzetta v. Florio's Enterprises, Inc.*, 763 F. Supp. 2d 615 (S.D.N.Y. 2011), the district court noted that "facilitating the violations at issue [] has also been considered significant in the economic reality inquiry." *Id.* at 627. The Connecticut Supreme Court has also found that the fact that a defendant "caused" the alleged CWMA violation is an important factor in determining whether that defendant employed the plaintiff within the meaning of the CWMA. *See Butler*, 243 Conn. at 462 ("We, therefore, agree with the plaintiff that when placed in its statutory context, the term employer as used in § 31-72 encompasses an individual who possesses the ultimate authority and control within a corporate employer

to set the hours of employment and pay wages and therefore is the specific or exclusive cause of improperly failing to do so."). As previously noted, Plaintiff alleges that Defendants were the specific cause of the alleged CMWA violation because they improperly designated all Program Managers as exempt from employment compensation. (*See* Amend. Compl. ¶ 16.) This, in addition to her allegation that Defendants Holdings and Services determined her rate and method of payment (*see id.* ¶¶ 7–8), is sufficient to establish that Defendants Holdings and Services were her employers within the meaning of the CWMA.

**II.    Conclusion**

For the reasons discussed above, Defendants' Motion to Dismiss [Doc. # 43] is DENIED.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 20th day of December, 2012.

12